Mary KOVELESKIE, Plaintiff–Appellee,

v.

SBC CAPITAL MARKETS, INC. a/k/a
SBC Warburg, Inc., Defendant–
Appellant.

No. 98–1793.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1998.

Decided Feb. 4, 1999.

Mary Stowell, Linda Friedman (argued), Leng, Stowell, Friedman & Vernon, Chicago, IL, for Plaintiff–Appellee.

Catherine M. Masters (argued), Schiff, Hardin & Waite, Chicago, IL, for Defendant–Appellant.

Before FLAUM, EASTERBROOK and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

SBC Capital Markets, Inc. ("SBC") appeals from the district court's denial of its motion to dismiss and to compel arbitration of Mary Koveleskie's employment-related sexual discrimination claims under Title VII of the Civil Right Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 et seq. We now reverse and remand, holding that Title VII claims can be subject to mandatory arbitration and that the parties' agreement to arbitrate is an enforceable contract. In the context of this opinion, we employ the term "mandatory arbitration" to reflect the contractual situation where if one party to a dispute requests arbitration, the other party is obliged to arbitrate.

## I. BACKGROUND

Mary Koveleskie worked for SBC and one of its predecessor companies from 1986 until 1996, when she resigned, claiming constructive discharge. Koveleskie asserts that during her employment she was subjected to a continued pattern of unlawful sexual discrimination, the facts of which do not bear on this appeal. At the time of her resignation she held the title of Director and worked in a securities trading position.

Koveleskie's job required her to register as a securities representative with several securities exchanges or organizations ("exchanges" or "SROs"), using the securities industry's "Form U–4." In 1995, Koveleskie signed the Form U–4, registering with five SROs: the New York Stock Exchange ("NYSE"), the National Association of Securities Dealers ("NASD"), the Chicago Board of Options Exchange ("CBOE"), the Philadelphia Stock Exchange ("PHLX") and the Pacific Stock Exchange ("PSE"). The Form U–4 required, among other things, that a securities trader arbitrate before a panel of securities industry arbitrators any dispute with his or her employer that had to be arbitrated under the rules of the exchanges of which the employer is a member. The rules of all of the SROs Koveleskie registered with required arbitration of all disputes, including employment disputes, between members, like SBC, and registered representatives, like Koveleskie.[1]

Koveleskie filed a charge with the EEOC on June 28, 1996, received a right to sue letter, and filed this action in federal court on April 1, 1997. Koveleskie sought relief under Title VII, the Equal Pay Act and the New York Human Rights Law for sexual discrimination, sexual harassment, wage discrimination and retaliation. She also sought to invalidate the mandatory arbitration clause applicable through the Form U–4, and she sought a declaratory judgment that mandatory arbitration of discrimination claims under existing securities industry procedures violates the Constitution and Title VII.

SBC moved to dismiss the complaint and to compel arbitration. In a minute order, the district court refused to compel arbitration, concluding that "under recent authority, the discovery sought by plaintiff is appropriate before a decision can be reached on the arbitration issue."

## II. DISCUSSION

■ As an initial matter, we find jurisdiction for this appeal under section 16(a)(1)(C) of the Federal Arbitration Act ("FAA"), which provides that appeal may be taken from an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C). While the district court's order stated that discovery was needed "before a decision can be reached on the arbitration issue," there is no doubt from the record that the district court denied the defendant's motion and clearly meant to foreclose arbitration. Thus, in such a setting, this appeal was appropriate under the FAA. We acknowledge that our finding of jurisdiction is in disagreement with the Ninth Circuit, which recently held that all contracts of employment are outside the scope of the FAA. *See Craft v. Campbell Soup Co.*, 161 F.3d 1199 (9th Cir.1998). However, other circuits which have addressed this issue, *see McWilliams v. Logicon*, Inc., 143 F.3d 573, 576 (10th Cir.1998); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir.1997); *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747–48 (5th Cir.1996); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 596–601 (6th Cir.1995); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir.1972); *Dickstein*

---

1. The SEC has recently approved changes to NASD and NYSE arbitration rules creating an exception to mandatory arbitration of employment disputes. According to the amendments, statutory employment-related discrimination claims are arbitrable if the parties agree to arbitration *after* the dispute has been raised, but, absent such agreement, arbitration is not compulsory. The NASD rule change went into effect January 1, 1999 and applies to claims filed on or after that date. *See* SEC Rel. No. 34–40109, 63 Fed.Reg. 35299, 1998 WL 339422. The NYSE rule change was approved by the SEC on December 29, 1998 and is silent on the issue of retroactivity. *See* SEC Rel. 34–40858, 64 Fed.Reg. 1051, 1999 WL 3315. Thus, these rule changes have no impact on the present litigation, especially in light of the fact that Ms. Koveleskie registered with three other SROs that have not amended their arbitration rules.

*v. duPont*, 443 F.2d 783, 785 (1st Cir.1971), have concluded, as we have, *see Pryner v. Tractor Supply Co.*, 109 F.3d 354, 358 (7th Cir.1997); *Briggs & Stratton Corp. v. Local 232, International Union, Allied Industrial Workers of America (AFL–CIO)*, 36 F.3d 712, 714–15 (7th Cir.1994); *Pietro Scalzitti Co. v. Operating Engineers*, 351 F.2d 576 (7th Cir.1965), that such employment contracts are not excluded from the purview of the FAA.

Koveleskie argues that arbitration of her discrimination claims is improper because (1) Congress intended to preclude Title VII claims from the FAA, 9 U.S.C. § 1 et seq.; (2) the arbitration agreement is an unconscionable contract of adhesion; (3) the securities industry arbitration procedures are inadequate to protect the rights of a civil rights plaintiff and (4) the agreement violates the "unconstitutional conditions" doctrine.

## A. Title VII and the FAA.

■ The Federal Arbitration Act provides that predispute arbitration is enforceable and valid. The plaintiff argues that its use is prohibited in the Title VII setting. In order to resolve this challenge, we must consider whether Congress intended Title VII to preclude the use of pre-dispute arbitration agreements. If not, the FAA's presumption in favor of arbitrability applies to Title VII claims.

Section 118 of the 1991 Civil Rights Act (the "CRA"), passed on November 21, 1991, provides that "Where appropriate and to the extent authorized by law, the use of alternative dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under [Title VII]." Koveleskie argues that the language and legislative history of the CRA indicate that Congress did not intend to authorize compelled, involuntary arbitration in discrimination cases. However, the weight of authority strongly suggests otherwise.

In *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), which involved a claim of age discrimination brought under the Age Discrimination in Employment Act ("ADEA"), the Supreme Court held that the

FAA required the enforcement of the pre-dispute mandatory enforcement clause in a Form U–4 identical to the one signed by Koveleskie. When his employer sought to compel arbitration of Gilmer's ADEA claims, Gilmer challenged the application of arbitration to statutory civil rights claims. *Id.* The Court, noting that there was no reason to treat civil rights statutes any differently than other important statutes that may be the subject of enforceable arbitration agreements, held that pre-dispute arbitration clauses should be enforced unless the plaintiff showed that Congress specifically intended to preclude arbitration. *Id.* at 26, 111 S.Ct. 1647.

In holding that statutory discrimination claims could be the subject of enforceable arbitration clauses, the *Gilmer* Court stated that arbitration of such claims may be limited in three situations. First, if Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue, an arbitration agreement will not be enforced. Thus, the court must determine if the statute at issue precludes arbitration. The party challenging arbitration has the burden of showing that it is precluded. Second, an arbitration agreement may be challenged if there was a defect in contract formation (discussed below). Third, *Gilmer* left open the possibility that a plaintiff could challenge the adequacy of particular arbitration proceedings (discussed below).

Courts after *Gilmer* have routinely endorsed arbitration of discrimination claims, including those brought pursuant to Title VII. For instance, in a recent decision, the First Circuit held that Title VII does not, as a matter of law, prohibit pre-dispute arbitration agreements. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 163 F.3d 53 (1st Cir.1998). *Rosenberg* held that "neither the language of the statute nor the legislative history demonstrates an intent in the 1991 CRA to preclude pre-dispute arbitration agreements." *Id.* at 63. Moreover, the *Rosenberg* court concluded that mandatory arbitration was not at odds with the structure and purpose of the 1991 CRA, noting that "[i]t is difficult to see why the purposes of Title VII present a stronger case for re-

jecting arbitration than do the purposes of ... the ADEA ..." which was construed by the Supreme Court in *Gilmer* not to preclude arbitration. *Id.* at 63.

In another recent case involving a Form U–4 arbitration clause, the Third Circuit concluded that § 118 of the CRA endorsed arbitration on its face, and that "no amount of commentary from individual legislators or committees would justify a court in reaching the result" urged by the plaintiff in this case. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir.1998). *See also Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991) (holding that Title VII claims were subject to an arbitration clause based on a Form U–4); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997) (holding that Title VII claims are subject to pre-dispute arbitration agreements under the FAA); *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997) (affirming an order compelling arbitration of Title VII claims where an employee signed a mandatory arbitration agreement as a condition of his employment); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994) (holding that Title VII claims are subject to mandatory arbitration); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992) (holding that Title VII claims are subject to securities industry compulsory arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991) (holding that Title VII claims can be subject to compulsory arbitration).

To support her argument that Congress, through the 1991 CRA, intended to preclude arbitration of Title VII claims, the plaintiff relies on a recent Ninth Circuit case, *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir.1998), in which that court refused to enforce a Form U–4 arbitration clause. In *Duffield*, the court found ambiguity in § 118's language that "[w]here appropriate and to the extent authorized by law" arbitration is encouraged. *Id.* at 1193–94. After examining the legislative history, context and text of the CRA, the Ninth Circuit concluded that Congress intended to preclude compulsory arbitration of Title VII claims. *Id.*

We respectfully disagree with the Ninth Circuit on this issue, and instead concur with the majority of circuits that have held that Congress did not intend Title VII to preclude enforcement of pre-dispute arbitration agreements such as the one signed by Koveleskie. Specifically, we conclude, as did the Third Circuit, that "[o]n its face, the text of § 118 evinces a clear Congressional intent to encourage arbitration of Title VII and ADEA claims, not to preclude such arbitration," and that, with regard to the "authorized by law" language of the 1991 CRA, "it seems most reasonable to read this clause as a reference to the FAA." *Seus*, 146 F.3d at 183.

**B. Adequacy of Securities Industry Procedures.**

■ The plaintiff argues that securities industry arbitration procedures are inadequate because they fail to protect statutory rights and benefits and unfairly disfavor plaintiffs. In *Gilmer*, where the plaintiff raised the identical issue, the Court noted that "the NYSE arbitration rules ... provide protections against biased panels," and held that Gilmer had failed to show actual bias. 500 U.S. at 30, 111 S.Ct. 1647. However, the Court held that future plaintiffs might be able to demonstrate "procedural inadequacies in specific cases." *Id.* at 33, 111 S.Ct. 1647.

The plaintiff argues that securities industry arbitration is biased in three ways. All three of her challenges to the adequacy of securities industry arbitration procedures have been rejected by the Supreme Court and lower courts. First, Koveleskie claims that because securities industry arbitrators are not required to follow the law, plaintiffs are deprived of their rights and protections. However, while arbitrators are instructed in their Manual that they are not "strictly bound by case precedent or statutory law," they "are also told that if they manifestly disregard the law, the award may be vacated." *Illyes v. John Nuveen & Company, Inc.*, 949 F.Supp. 580, 584 (N.D.Ill.1996) (holding that an employee's discrimination claims were subject to mandatory arbitration).

Second, the plaintiff argues that the securities industry arbitrators routinely fail to follow Title VII's fee-shifting principle by refusing to award statutory attorneys' fees to prevailing plaintiffs and by charging plaintiffs expensive forum fees. This argument was explicitly rejected by the First Circuit in *Rosenberg*:

First, that arbitrators may sometimes do undesirable things in individual cases does not mean that the arbitral system is inadequate

. . .

Second . . . it does not appear to be the usual situation that a plaintiff is asked to bear forum fees

. . .

Third, if unreasonable fees were to be imposed on a particular employee, the argument that this was inconsistent with the 1991 CRA could be presented by the employee to the reviewing court.

163 F.3d at 68. Moreover, the court noted that arbitration is often more affordable to plaintiffs and defendants than litigating a claim in court. *Id.* at 68. In fact, under NYSE and NASD rules, it is standard practice in the securities industry for employers to pay all of the arbitrators' fees. *See Cole v. Burns International Security Services*, 105 F.3d 1465, 1483 (D.C.Cir.1997) (holding that an agreement to arbitrate applied to statutory discrimination claims but the employer could not require the employee to pay for all or part of the arbitrator's fees). The *Cole* court also noted that even when employees are required to pay a filing fee, expenses or an administrative fee, these fees are often waived because of hardship. *Id.* at 1483–84.

Third, Koveleskie argues that judicial review is not available to provide meaningful oversight of the securities industry arbitration process because arbitration awards, unlike judicial decisions, are not reviewable for statutory error and cannot be reversed on the ground that the arbitrators did not correctly apply Title VII principles. However, *Gilmer* held that "although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to insure that arbitrators comply with the requirements of the statute at issue." 500 U.S. at 32, 111 S.Ct.

1647. In addressing an identical challenge to the adequacy of judicial review of arbitration decisions, the D.C. Circuit found that "judicial review of arbitration awards is necessarily focused, but that does not mean that meaningful review is unavailable." *Cole*, 105 F.3d at 1486. The court noted both the text of the FAA, which provides a non-exclusive list of grounds on which an arbitration award may be vacated, and language from the Supreme Court indicating that arbitration awards may be vacated if they are in "manifest disregard of the law." *Id.* at 1486 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Based on the reasoning of this authority, we are convinced that judicial review of arbitration awards is sufficient to protect statutory rights.

*Gilmer* left open a door for plaintiffs to challenge mandatory arbitration of statutory claims by showing that arbitration system is structurally biased. However, we hold that Koveleskie has failed to show actual bias in the securities arbitration process.

## C. Contract Law.

■ Koveleskie next argues that because she was required to sign the Form U–4 as a condition of her employment, the arbitration clause created an unconscionable contract of adhesion and should be voided. We reject this argument, as have numerous courts, including the Supreme Court. Most recently, the First Circuit held in *Rosenberg* that the mandatory arbitration agreement contained in the Form U–4 does not create an unconscionable contract of adhesion. 163 F.3d at 68.

It is true that Koveleskie was required by her employer to register with several exchanges, and that by signing the Form U–4 she was bound by the SROs' mandatory arbitration rules. According to the plaintiff, such conditions created a take-it-or-leave-it contract situation, and placed her in a position of reduced bargaining power vis-a-vis her employer.

■ An agreement to arbitrate is treated like any other contract: "In determining whether a valid agreement arose between the

parties, a federal court should look to the state law that ordinarily governs the formation of contracts." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997). In the present case, we look to the contract law of Illinois, the state where all relevant events in this dispute arose. *Id.* (citing *First Options of Chicago, Inc.*, 514 U.S. at 944, 115 S.Ct. 1920).

 Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called "take-it-or-leave-it" deal and

> consent to [the] agreement is secured because of hard bargaining positions or the pressure of financial circumstances. Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated ... [T]he mere fact that a person enters into a contract as a result of the pressure of business circumstances ... is not sufficient.

*Kewanee Prod. Credit Ass'n v. G. Larson & Sons Farms*, 146 Ill.App.3d 301, 305, 99 Ill. Dec. 838, 496 N.E.2d 531, 534 (1986). The only alleged wrongdoing here is requiring arbitration as a condition of employment, but, applying Illinois law, this court has noted that driving a hard bargain is not a wrongful act. *See Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 314 (7th Cir.1992). Nor does "the mere fact that one is in a difficult bargaining position invalidate a contract." *Id.* The plaintiff argues that as an individual employee rather than a business entity, she had no bargaining power. However, "the disparity in the size of the parties entering into the agreement ... without some wrongful use of that power," is not enough to render an arbitration agreement unenforceable. *Alexander v. Standard Oil*, 97 Ill.App.3d 809, 811, 53 Ill.Dec. 194, 423 N.E.2d 578, 580 (1981).

Even if Illinois law considered pre-dispute arbitration agreements unconscionable, the FAA would preempt such law. The FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and the Supreme Court has held that if a state singles out arbitration agreements, either statutorily or judicially, by imposing restrictions separate from its general contract law, that state law is preempted by the FAA. *See Doctor's Associates v. Casarotto*, 517 U.S. 681, 686–88, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

Our decision on this issue is in accord with other courts that have addressed it. First, in *Gilmer*, the Supreme Court specifically rejected the argument that the Form U–4 creates an unconscionable contract of adhesion because of the unequal bargaining power between the plaintiff and his employer. 500 U.S. at 33, 111 S.Ct. 1647. Similarly, in *Seus*, the Third Circuit found the Form U–4 to be a valid contract, because "[t]he terms of the Form U–4 that [the plaintiff] signed were not oppressive, unconscionable, or unreasonably favorable to either the NASD or [the defendant]." 146 F.3d at 184. Finally, the First Circuit, in *Rosenberg*, held that "[a]bsent a showing of fraud or oppressive conduct" the Form U–4 is not unenforceable on the grounds that it is an unconscionable contract of adhesion. 163 F.3d at 69. As there has been no showing of fraud, misconduct or wrongdoing on the part of SBC, there is no reason to invalidate this contract for unconscionability.

The present case is distinguishable from our decision in *Gibson*, which held that a lack of consideration rendered an employee's promise to submit claims to arbitration unenforceable. 121 F.3d 1126. In *Gibson*, the plaintiff signed a contract provided by her employer which stated "I agree to the grievance and arbitration provisions set forth in the Associates Policy Manual" (the "Manual"). *Id.* at 1128. The Manual, which was not given to Gibson at the time when she signed the contract, specifically stated that all disputes, including Title VII claims, were subject to arbitration, but also stated that "it does not constitute a contract or promise of any kind" on the part of the employer. *Id.* at 1128. Thus, the employer was not bound by the Manual's terms. This court found, applying Indiana law, that because Gibson was not given a copy of the Manual at the time she signed the contract, and because

she never signed the Manual, there was no consideration in the form of a promise by the employer in exchange for Gibson's agreement to arbitrate. Additionally, this court found that Gibson's promise to arbitrate was not supported by consideration in the form of her employer's promise to hire her or to continue to employ her. *Id.* at 1131.

In the present case, the plaintiff's contract with SBC was supported by adequate consideration. First, Koveleskie signed the Form U–4 in exchange for SBC's promise to employ her. Second, the Form U–4 at issue here bound both parties to the rules of the designated SROs and allowed arbitration at the insistence of either party.

### D. Constitutional Arguments.

■ Koveleskie argues that mandatory securities industry arbitration under federally-compelled and SEC-approved procedures violates her rights under Article III, the Seventh Amendment and the Fifth Amendment based on the "unconstitutional conditions" doctrine. The unconstitutional conditions doctrine prohibits a private entity, acting pursuant to governmental mandate, from conditioning a worker's employment upon a waiver of that worker's constitutional rights. *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 674, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). This doctrine specifically requires governmental action inducing a waiver of rights. *Id.* Thus, without state action, there can be no violation.

The alleged state actor here is the SEC, but the SEC required registration with an exchange, not entry into an arbitration agreement. Some, but not all, exchanges require arbitration agreements.[2] The plaintiff registered with exchanges that required her to sign an arbitration agreement, but the SEC certainly did not mandate that she register with those exchanges. Perhaps her employer did, but SBC is not a state actor. Additionally, Koveleskie registered with SROs that required arbitration "at the insistence" or "request" of any party.[3] Thus, disputes between the parties are eligible for arbitration, but only if one of the parties to the agreement demands it. Parties are always free to agree not to make a demand, even if they sign a Form U–4.[4] In this case, the defendant, not the government, sought to compel arbitration, so there is no basis to find that Koveleskie was deprived of her rights because of government action.

■ Even if one were to assume state action here, it is highly unlikely that any constitutional violation occurred. The right to an Article III forum is waivable, and Koveleskie waived this right by signing the Form U–4 and consenting to arbitration. *See CFTC v. Schor*, 478 U.S. 833, 848–49, 853–54, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). Koveleskie argues that the arbitration agreement violates her Seventh Amendment right to a trial by jury, but the law is clear that there is no constitutional right to a jury trial outside of an Article III forum. *Geldermann, Inc. v. CFTC*, 836 F.2d 310, 323 (7th Cir.1987).

■ The plaintiff also argues that the arbitration agreement violates her Fifth Amendment due process and equal protection rights because it denies her the right enjoyed by all other plaintiffs to have Title VII claims decided by a tribunal that is required to apply the statutory standards established by Congress and the courts. This argument relies on the notion that a non-Article III forum is inadequate to protect statutory rights, but that is simply not the case. It is true that "statutory rights require both a substantive protection and

---

**2.** For instance the American Stock Exchange ("AMEX") does not require arbitration of disputes between associated members (like Koveleskie) and their firms (like SBC). *See* American Stock Exchange Rule 600(a), American Stock Exchange Guide (CCH) ¶ 9540, at 2811 (1991).

**3.** NYSE Rule 347; NASD Rule 10201; CBOE Rule 18.1; PHLX Bylaws § 10–8 and PSE Rule 12.1.

**4.** In fact, the defendant points out that plaintiff's counsel has negotiated an agreement with Merrill Lynch never to demand arbitration of employment disputes under exchange rules and has posted a web site publicizing that fact. *See Merrill Lynch Class Action Web Site* (visited January 13, 1999) <http://www.classactionmerrill.com>.

access to a neutral forum in which to enforce those protections." *Cole*, 105 F.3d at 1482. However, we are satisfied, as was the Court in *Gilmer*, that the arbitral forum adequately protects an employee's statutory rights, both substantively and procedurally. 500 U.S. at 28, 111 S.Ct. 1647; *see also Cole*, 105 F.3d at 1482; *Seus*, 146 F.3d at 180.

## E. Equal Pay Act and New York Human Rights Law.

■ Finally, Koveleskie's Equal Pay Act and New York Human Rights Law claims are arbitrable. Koveleskie has not argued that the FAA precludes arbitration of these claims because the Equal Pay Act or the New York Human Rights Law are exempted from the FAA. Therefore, these claims must be arbitrated. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (district court has no discretion not to compel arbitration of claims subject to arbitration). Thus, even if this court had determined that Koveleskie's Title VII claims were precluded from arbitration, her other claims still would be subject to securities industry arbitration.

## III. CONCLUSION

We hold that the district court erred in denying the defendant's motion to compel arbitration of Koveleskie's discrimination claims. We find controlling the Supreme Court's reasoning and decision in *Gilmer*. For all the reasons stated herein, the order of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.