Edward BOYD, Plaintiff,

v.

**THE TOWN OF HAYNEVILLE, ALABAMA, Defendant.**

**No. CIV. A. 00–A–1657–N.**

United States District Court,
M.D. Alabama,
Northern Division.

May 31, 2001.

Adams M. Porter, Birmingham, AL, for plaintiff.

T. Randall Lyons, Rick A. Howard, Montgomery, AL, for defendant.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This matter is before the court on a Motion to Compel Arbitration (doc. # 4) filed by Defendant Town of Hayneville, Alabama (hereinafter "Town of Hayneville") in response to Plaintiff's Complaint.

Edward Boyd ("Plaintiff") filed his two count Complaint in this court on December 5, 2000, alleging violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Count I) and of 42 U.S.C. § 1983 (Count II). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

The Town of Hayneville contends that Plaintiff is required by contract to submit these claims to binding arbitration and, therefore, has filed this Motion to Compel Arbitration. For reasons to be discussed, the Motion is due to be GRANTED.

## II. FACTUAL SUBMISSIONS & ALLEGATIONS

Plaintiff, a black male, began working for the Town of Hayneville as Police Chief in June of 1997. In the fall of 1998, Plaintiff started suffering fainting spells. Plaintiff's doctor diagnosed Plaintiff in November of 1998 as having low blood pressure and prescribed Plaintiff medication for his condition. Thereafter, Plaintiff returned to work with the permission of his doctor. On the day of his return to work, Plaintiff was allegedly relieved of his supervisory authority over police department vehicles by the acting mayor of the Town of Hayneville, J.W. Wible, a white male. Plaintiff contends that Mayor Wible then entrusted Sergeant John Shaner, a white male, with authority over the vehicles and restricted Plaintiff from driving any such vehicles.

Later, Plaintiff alleges that Mayor Wible, without legal cause, placed Plaintiff on indefinite leave and made Sergeant Shaner the acting Police Chief. Plaintiff also claims that Mayor Wible sent Plaintiff a letter accusing Plaintiff of engaging in various acts of malfeasance and misconduct with respect to his job. This letter allegedly stripped Plaintiff of his supervisory authority over other employees at the Town of Hayneville Police Department. Plaintiff claims that he refused to return to work until Mayor Wible restored Plaintiff's supervisory authority. Mayor Wible demanded that Plaintiff return to work, but did not restore Plaintiff's supervisory authority. Plaintiff did not return to work. Plaintiff insists that the various adverse actions taken against him were on account of his race.

Plaintiff signed an employment contract with the Town of Hayneville on June 23, 1997 that contained among its terms the following arbitration clause:

### Arbitration

6.03. Any controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment on the award rendered may be entered in any court having jurisdiction over the matter.

Attachment to Town of Hayneville's Motion to Compel.

Based on this provision in Plaintiff's employment contract, the Town of Hayneville now seeks to compel arbitration.

## III. THE FEDERAL ARBITRATION ACT

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any ...

contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

■ The Supreme Court has acknowledged that large arbitration costs could preclude a litigant from effectively vindicating his federal statutory rights. *Green Tree Fin. Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). The party seeking to avoid arbitration bears the burden of establishing the likelihood of incurring such prohibitive costs. *Id.*

## IV. *DISCUSSION* [1]

Plaintiff raises only one argument in opposition to the Town of Hayneville's Motion to Compel Arbitration.[2] He contends

that the arbitration agreement he entered into should not be enforced because he "cannot afford to pay the anticipated costs of arbitration."[3] Pl's Br. at 6. Alternatively, in the event that the court is inclined to grant the Town of Hayneville's Motion to Compel Arbitration, Plaintiff requests the court to order the Town of Hayneville to pay all costs of arbitration other than one-half of the filing fee required by the American Arbitration Association ("AAA"). The Town of Hayneville has not responded to either Plaintiff's argument opposing arbitration or his suggested fee-sharing arrangement.

### A. *AAA's National Rules for the Resolution of Employment Disputes*

As noted in section 6.03 of the employment contract, any arbitration between Plaintiff and the Town of Hayneville is to be governed by the AAA's Rules. Plaintiff has provided the court with a copy of the 1999 version of the AAA's Rules covering employment disputes.[4] The AAA Rules state the following regarding the costs and fees associated with the arbitration of Plaintiff's claims:

38. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other ad-

---

1. Many issues relating to the fairness of arbitration, including the topic of costs and fees discussed below, remain unresolved by the appellate courts. Since this case involves a developing area of the law, this court's resolution of the present motion should be viewed in light of the particular record developed in this case and the positions advanced by the parties.

2. In his initial Response, Plaintiff indicated that he might seek a stay of arbitration on the grounds that employment contracts are not subject to the FAA. Plaintiff has since abandoned this argument given the United States Supreme Court's recent decision in *Circuit*

*City Stores, Inc. v. Adams,* —— U.S. ——, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

3. Plaintiff concedes that he signed the arbitration provision at issue and that, under its broad terms, the provision covers the present dispute.

4. It is unclear from the record whether these are the most recently promulgated rules of the AAA relating to employment disputes. Because the Town of Hayneville has not objected to the AAA Rules provided by Plaintiff, the court considers these AAA Rules to be applicable to the arbitration of the instant dispute between Plaintiff and the Town of Hayneville.

ministrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

**The filing fee shall be advanced by the initiating party or parties, subject to final apportionment by the arbitrator in the award.**

**The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees.**

### 39. Expenses

Unless otherwise agreed by the parties, the expenses of witnesses for either side shall be borne by the party producing such witnesses. All expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the costs relating to any proof produced at the direction of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator directs otherwise in the award.

### 40. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA from the parties for this purpose.

### 41. Deposits

The AAA may require the parties to deposit in advance of any hearing such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

## ADMINISTRATIVE FEE SCHEDULE

### Administrative Fee

The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. **Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.**

### Filing Fees

*For disputes which arise out of employer-promulgated plans:*

In cases before a single arbitrator, a nonrefundable filing fee in the amount of $500 is payable in full by a filing party when a claim is filed, unless the plan provides otherwise.

### Hearing Fees

For each day of hearing before a single arbitrator, an administrative fee of $150 is payable by each party.

### Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the administrator for availability and rates.

Suspension for NonPayment

If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the administrator may suspend the proceedings.

Exh. 4 (attached to Pl's Br.) (emphasis in bold added).

Plaintiff has submitted evidence which indicates that the range of AAA arbitrator compensation for employment cases is between $100 and $300 per hour. Exh. 3 at ¶ 7 (attached to Pl's Br.). Plaintiff's counsel estimates that, in the event Plaintiff were required to pay one-half of the cost of the AAA administrative and arbitrator fees, arbitration of his employment discrimination claims would cost him between $1,150 and $6,400. Pl's Br. at 8. Of course, at this point Plaintiff has not been assessed with any arbitration fees or costs, and it is unclear under the AAA Rules, which provide for hardship deferment and/or reduction and allocation of fees and costs in the award, what Plaintiff's arbitration related expenses would be.

## B. *Plaintiff's Financial Condition*

Plaintiff is currently a police officer in Union Springs, Alabama. In addition to his job as a law enforcement officer, Plaintiff teaches D.A.R.E. classes for the Lowndes County Board of Education. Exh. 2 at ¶ 3 (attached to Pl's Br.). Plaintiff and his wife have three children who live with them. *Id.* at ¶ 5. Plaintiff and his wife take home $2,078 per month, and their average monthly bills total $1,951. *Id.* at ¶¶ 3 & 4.

In addition to supporting their children, Plaintiff and his wife provide some assistance to Plaintiff's mother-in-law. *Id.* at

¶ 7. "They do not own any property other than their home. Plaintiff has a retirement plan with the State Retirement System. Other than that, neither plaintiff nor his wife own any stocks or other such investments. They do not have a savings account. They own two cars, but they each need a car to get to work and transport the children." Pl's Br. at 5–6.

### C. *Enforceability of the Arbitration Provision*

Plaintiff argues that the AAA Rules incorporated into his employment contract render the arbitration provision unenforceable because those rules make it impossible for Plaintiff to vindicate his federal statutory rights in the arbitral forum. In support of this argument, Plaintiff relies on the Supreme Court's decision in *Green Tree Fin. Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Eleventh Circuit's decision in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998), and the D.C. Circuit's decision in *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465 (D.C.Cir. 1997).

■ Before considering those cases, the court notes that the FAA was enacted and codified by Congress in order to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA manifests a liberal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court has recently reminded the courts of the efficacy of that pro-arbitration policy. *Randolph,* 121 S.Ct at 522; *see also Ran-*

*dolph v. Green Tree Fin. Corp.–Alabama,* 244 F.3d 814, 818–19 (11th Cir.2001) ("According to the Supreme Court, the last time this case was before us we made the mistake of giving too little weight to the FAA's pro-arbitration policy. We decline to make the same mistake again.").

In its recent *Randolph* decision, the Supreme Court addressed the question of "whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs." 121 S.Ct at 517. While grappling with this question, the court noted that "[i]t may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 522. The record before the Court gave no indication of what costs Randolph would bear in arbitration. Consequently, the Court stated that:

> [t]he record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. **The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.** To invalidate the agreement on that basis would undermine the "liberal federal policy favoring arbitration agreements." ... It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.... [W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.... How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evi-

dence is a matter we need not discuss....

*Id.* at 522–23 (citations omitted and emphasis added).

While the Supreme Court never reached the precise issue presented in this case, it did provide some guidance. First, the Court reemphasized the federal policy favoring arbitration. Second, the Court refused to nullify an arbitration agreement based upon speculation concerning the possibility of a claimant incurring prohibitive costs in the arbitral forum. Finally, the Court placed the burden of demonstrating the "likelihood" of incurring such prohibitive costs on the party opposing arbitration.

In *Paladino,* a case that preceded the Supreme Court's opinion in *Randolph,* the Eleventh Circuit confronted an arbitration clause which, had it been enforced according to its terms, would have limited a Title VII claimant to contract damages. 134 F.3d at 1062. The Eleventh Circuit held that the arbitration clause "defeat[ed] the statute's remedial purposes because it insulated [the employer] from Title VII damages and equitable relief." *Id.*

In addition, the Eleventh Circuit identified another problem with the arbitration clause in *Paladino.* That clause would have required the claimant to pay a "steep" filing fee of $2000 and up to one-half of the "hefty cost of arbitration." *Id.* The Eleventh Circuit noted that costs of this magnitude constituted a "legitimate basis" for holding that the arbitration clause did not "comport with statutory policy." *Id.* The *Paladino* court concluded that "a clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII. [The arbitration clause] is not enforceable." *Id.*

Obviously, *Paladino* is distinguishable from the present case. The arbitration clause in *Paladino* substantially circumscribed the remedies available to the employee-claimant under Title VII, whereas the arbitration clause in this case places no such limitations on the Plaintiff. Additionally, the filing fee required of the claimant in *Paladino* was $2000. The filing fee in this case is $500. While such a fee is certainly not insignificant, it pales in comparison to the "steep" filing fee criticized by the Eleventh Circuit in *Paladino*. Finally, the AAA Rules applicable in this case provide for "extreme hardship" deferral and/or reduction of administrative fees and allocation of arbitrator compensation and administrative fees in the award. These provisions tend to show that the arbitration clause and the AAA Rules it incorporates comport with federal statutory policy.

In *Cole*, the D.C. Circuit held that, in a case such as this one, an employer cannot require an employee to arbitrate all disputes growing out of the employer-employee relationship as a condition of employment and also require the employee to pay all or part of the arbitrator's fees. 105 F.3d 1465, 1468. Instead, the D.C. Circuit effectively adopted a per se rule against splitting the costs of an arbitrator in employment cases where the employer has required arbitration as a condition of employment. The rationale supporting the *Cole* opinion is as follows:

> There is no doubt that parties appearing in federal court may be required to assume the costs of filing fees and other administrative expenses, so any reasonable costs of this sort that accompany arbitration are not problematic. However, if an employee like Cole is required to pay arbitrators' fees ranging from $500 to $1000 per day or more, ... in addition to administrative and attorney's fees, is it likely that he will be able to pursue his statutory claims? We

> think not ... These fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job, and it is unacceptable to require Cole to pay arbitrators' fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court. Arbitration will occur in this case only because it has been mandated by the employer as a condition of employment. Absent this requirement, the employee would be free to pursue his claims in court without having to pay for the services of a judge. In such a circumstance—where arbitration has been imposed by the employer and occurs only at the option of the employer—arbitrators' fees should be borne solely by the employer.

*Id.* at 1484–85.

The *Cole* court enforced the arbitration agreement after interpreting it to require the employer to pay all of the arbitrator's fees. *Id.* at 1485.

While the Tenth Circuit has adopted the reasoning supporting the *Cole* decision and its per se rule against sharing arbitrator's fees in employment discrimination cases, *see Shankle v. B–G Maintenance Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1233–36 (10th Cir.1999), other circuit courts of appeals have refused to do so. *See, e.g., Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 555–58 (4th Cir.2001) (rejecting per se rule followed in *Cole*); *Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752, 762–65 (5th Cir.1999) (upholding an arbitration agreement that required an ADEA claimant to pay $3,150, or one-half share, of arbitration costs which included arbitrator's fees); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 15–16 (1st Cir. 1999) (rejecting *Cole* approach and noting that arbitration is frequently far more affordable to plaintiffs and defendants than

pursuing a claim in court); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 365–66 (7th Cir.1999) (following *Rosenberg*). The Eleventh Circuit has not decided this issue.

■ Absent any binding authority from the Eleventh Circuit, this court believes that the more prudent course, given the Supreme Court's recent decision in *Randolph,* is to follow the lead of those circuit courts which have declined to adopt a per se rule against fee-splitting. The possibility that a claimant could be required to pay a share of the arbitration costs, including part of an arbitrator's fees, is not, by itself, a sufficient reason to invalidate an arbitration clause prior to arbitration. *Rosenberg,* 170 F.3d at 15–16; *Koveleskie,* 167 F.3d at 366. Such arbitration related expenses are acceptable so long as they do not render the arbitral forum inaccessible to the statutory claimant.

■ Here, Plaintiff has provided the court with a range of what he describes as "anticipated" arbitration costs. The problem with these cost projections is that they amount to nothing but conjecture. It is not possible, given the record before this court, to know with any degree of certainty, what Plaintiff's arbitration costs might be. For example, under the AAA Rules, Plaintiff's financial situation will presumably be factored into the assessment of costs under the hardship provision. Moreover, depending on the merits of Plaintiff's case, his costs may or may not, in whole or in part, be awarded him. To the extent that the arbitration clause requires Plaintiff to pay his own attorney's fees and litigation expenses, "such burden is one borne by any litigant in federal court as well." [5] *Dabney v. Option One Mortgage Corp.,* 2001 WL 410543, *4 (E.D.Pa. April 19, 2001). In short, Plaintiff has only demonstrated the "risk" that he might be encumbered with prohibitive arbitration costs. Under *Randolph,* the risk that Plaintiff might be saddled with prohibitive costs is "too speculative" to require invalidation of this arbitration clause prior to enforcement.

■ This court recognizes that, given Plaintiff's financial situation, the costs of either litigating or arbitrating his federal claims could place him in a precarious position. Should the costs of arbitration in this case not be roughly symmetrical to the costs of litigating the same claims in federal court, judicial review of the arbitration award would be available. *See Rosenberg,* 170 F.3d at 16 (holding that the imposition of unreasonable fees on an employee by an arbitrator is reviewable); *Koveleskie,* 167 F.3d at 366 (same); *Palmer–Scopetta v. Metropolitan Life Ins. Co.,* 37 F.Supp.2d 1364, 1370 (S.D.Fla.1999) ("If ... Plaintiff becomes liable for substantial fees and costs, this likely will constitute 'a legitimate basis for a conclusion that the arbitration clause does not comport with statutory policy.' If that occurs, Plaintiff may present to this Court her contention that the referral to arbitration or the arbitration award is inconsistent with [federal statutory law].") (citations omitted). As the Supreme Court stated in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32 n. 4, 111 S.Ct. 1647, 114 L.Ed.2d 26

---

**5.** It is noteworthy that Plaintiff has not provided any evidence relating to the comparative expense of litigating his claims. Such evidence is highly relevant to the question presented in this case. *See Bradford,* 238 F.3d at 556 n. 5 ("The cost of arbitration, as far as its deterrent effect, cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are 'too high.' Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs.").

(1991), "although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute at issue."

### D.  *Reformation of Plaintiff's Employment Contract*

In his Opposition Brief, Plaintiff recognized the possibility that the Town of Hayneville's Motion to Compel Arbitration would be granted in this case and, as a result, proposed an "alternative resolution to the motion." Pl's Br. at 9. Specifically, Plaintiff has requested that this court order the Town of Hayneville to pay all costs of arbitration pursuant to the employment contract except for one-half of the filing fee.  To determine whether reformation of the employment contract entered into by the parties is proper, the court turns to Alabama law as it applies generally to all contracts.  *Young v. Jim Walter Homes, Inc.,* 110 F.Supp.2d 1344, 1346 (M.D.Ala. 2000).

The remedy of reformation is equitable in nature. *McCay v. Jenkins,* 244 Ala. 650, 15 So.2d 409, 410 (1943).  It is an extraordinary remedy available for the purpose of establishing and perpetuating "true agreement between parties by making the instrument express [the] real intent of the parties." *Rohleder v. Family Shows, Inc.,* 435 So.2d 95, 97 (Ala.Civ.App. 1983).  Reformation is not available for the purpose of making new agreements. *Id.*

A party may seek to reform an instrument where (1) there has been a meeting of the minds of the contracting parties, and a mutual mistake in executing an instrument not expressive of their common intent; or (2) one party has made a mistake, and the other party has acted in such a way as to make it "inequitable to deny a mutual mistake." *McCay,* 15 So.2d at 410.  The burden is on the reform-seeker to prove his case by clear, convincing, and satisfactory evidence. *Federated Guaranty Life Ins. Co. v. Painter,* 360 So.2d 309, 311 (Ala.1978).

Plaintiff is simply requesting that this court rewrite the agreement he entered into with the Town of Hayneville.  It is beyond doubt, however, that Plaintiff cannot meet the heavy burden placed upon him by Alabama law as it relates to the equitable modification of such agreements. Because this court does not have the authority to make a new agreement for the parties, the Plaintiff's requested "alternative resolution to the motion" is due to be denied.

## V.  CONCLUSION

For the foregoing reasons, and especially given the liberal federal policy favoring arbitration, this court will not deny enforcement of the arbitration clause.  If, however, Plaintiff incurs substantial costs in arbitration which preclude him from effectively vindicating his federal statutory rights, Plaintiff may petition this court for review and relief.

The Town of Hayneville's Motion to Compel Arbitration is due to be granted. Plaintiff's request for reformation of the employment contract is due to be denied. A separate Order will be entered in accordance with this Memorandum Opinion.