Nellie HOWARD, Plaintiff,

v.

Kathy ANDERSON, KPMG Peat Marwick, and KPMG Peat Marwick LLP, Defendants.

No. 96 Civ. 919 (SWK).

United States District Court,
S.D. New York.

Feb. 17, 1999.

Gregory L. Reid, Mount Vernon, NY, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this case asserting employment discrimination on the basis of gender and race, plaintiff Nellie Howard ("Howard") moves the Court to compel defendants to pay all but $150 of the fees associated with the arbitration of her claims. For the reasons set forth below, Howard's motion is denied.

## BACKGROUND [1]

Howard alleges that on September 20, 1993, she commenced employment with defendants KPMG Peat Marwick and KPMG Peat Marwick LLP (collectively "Peat Marwick") in New York. On or about November 4, 1993, Howard received a Senior Manager's Agreement dated September 20, 1993 (the "Agreement"), which described the terms of her employment. The Agreement contained, *inter alia*, an arbitration provision. The arbitration clause provides:

> Any claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of the employment of Senior Manager by Peat Marwick, shall be settled by arbitration under the rules of the American Arbitration Association and the laws of the State of New York.

---

1. The background of this case is set forth more fully in the Court's October 16, 1996 Memorandum Opinion and Order, familiarity with which is presumed. Only those facts related to the disposition of the instant motion are discussed below.

Agreement, annexed to the Affidavit of John Hutchinson, sworn to August 12, 1998 (the "Hutchinson Aff."), as Exh. "3," at ¶ 11. In or about January or early February 1994, after having reviewed the terms of the Agreement, Howard discussed it with defendant Kathy Anderson. Sometime in early February 1994, Howard signed and returned the Agreement to Peat Marwick.

On or about October 25, 1994, Howard's employment with Peat Marwick was terminated. On or about February 7, 1996, Howard filed this lawsuit alleging, *inter alia,* violations of state and federal laws against race and gender discrimination, including 42 U.S.C. § 2000e *et seq.* ("Title VII"). On April 23, 1996, defendants brought a motion to stay judicial proceedings pending arbitration. On October 16, 1996, the Court granted defendants' motion, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

On or about January 9, 1998, Howard filed a Notice of Intention to Arbitrate Employment Disputes with the American Arbitration Association ("AAA"), accompanied by a check in the amount of $150. *See* Notice of Intention to Arbitrate Employment Disputes with the American Arbitration Association, annexed to the Affidavit of Gregory L. Reid, sworn to July 28, 1998 ("Reid Aff."), as Exh. "1." On or about January 21, 1998, the AAA wrote Howard, notifying her that based on her $10 million claim, a filing fee of $9,000 would be required. Letter, dated Jan. 21, 1998, from Scott Besendorfer to Gregory L. Reid, annexed to Reid Aff., as Exh. "2." On February 6, 1998, the Court received a letter from Howard requesting the Court to compel defendants to pay all but $150 of the fees associated with arbitrating her claims. On March 11, 1998, the Court directed Howard to exhaust the AAA's mechanisms for waiving the fees associated with arbitration. On or about April 6, 1998, the AAA made the following ruling on Howard's hardship application:

> "$500 of the filing fee must be paid up front, with the remaining $2,500 portion of the filing fee to be deferred until the con-

clusion of the case. Please be advised that the Association can not waive or defer arbitrator's compensation, and accordingly those amounts will be [sic] become due upon commencement of the hearings. Additional administrative fees as described on page 29 of the National Rules for the Resolution of Employment Disputes [sic]."

Letter, dated April 6, 1998, from Scott Besendorfer to Gregory L. Reid ("April 1998 AAA Letter"), annexed to Reid Aff., as Exh. "5." On July 1, 1998, despite the untimeliness of Howard's initial request for relief, the Court directed her to file the instant motion.

## DISCUSSION

### I. Arbitration of Statutory Claims

■ Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444; *see Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 26, 111 S.Ct. 1647. "So long as the prospective litigant effectively may vindicate [her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 28, 111 S.Ct. 1647. Accordingly, pre-dispute agreements to arbitrate Title VII claims are enforceable.[2] *See e.g., Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 364–65 (7th Cir.1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 163 F.3d 53, 59 (1st Cir.1998); *Seus v. John Nuveen & Co.,* 146 F.3d 175, 182 (3d Cir.1998); *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 882 (4th Cir.1996); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1487 (10th Cir.1994); *Bender v.*

---

**2.** Howard does not challenge the principle that Title VII claims are arbitrable under the FAA. *See* October 1996 Order, at 15 n. 6.

*A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 308 (6th Cir. 1991); *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991); *Rand v. J.C. Bradford & Co.,* No. 98 Civ. 4906 (DLC), 1998 WL 872421, at *4 (S.D.N.Y. Dec.15, 1998) (collecting Second Circuit cases); *but see Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998), *cert. denied,* — U.S.——, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998) (refusing to enforce predispute agreement to arbitrate employment discrimination claim).

## II. Financial Burdens of Arbitration

In some circumstances, significant financial burdens placed on a plaintiff's access to the arbitral forum may impede Title VII's remedial and deterrent function. *See Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230 (10th Cir.1999); *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998); *Cole v. Burns Int'l Security Svcs.,* 105 F.3d 1465 (D.C.Cir. 1997). Thus, some courts have held that arbitration agreements cannot impose steep filing fees, *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d at 1062, or shift fees so that plaintiffs are required to pay part of the arbitrator's compensation, *Cole v. Burns Int'l Security Svcs.,* 105 F.3d at 1484.

For example, when Burns Security hired Clinton Cole ("Cole"), it required him to agree to submit at his employer's request any employment disputes to binding arbitration in accordance with the rules of the AAA. *Cole v. Burns Int'l Security Svcs.,* 105 F.3d at 1469. After being fired, Cole brought a suit against Burns alleging racial discrimination under Title VII. *Id.* The district court granted the employer's motion to compel arbitration and dismissed Cole's complaint. The Court of Appeals for the District of Columbia Circuit held that Cole could not be required to arbitrate his claims if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses. *Id.* at 1485–86. Thus, Burns Security was required to pay all of the arbitrator's fees to proceed with the arbitration. *Id.* at 1486.

In *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998), the Court of Appeals for the Eleventh Circuit was faced with an employee who, prior to beginning work, signed a handbook acknowledgment containing a "consent to arbitration" agreement. *Id.* at 1056. The arbitration agreement was silent as to who would bear the costs of arbitration and it indicated that the arbitration would follow AAA rules. A majority of the Court held that the agreement to arbitrate was unenforceable because the employee would be liable for the $2,000 filing fee and potentially half of "the hefty cost of an arbitration." *Id.* at 1062. The court found these potential costs "a legitimate basis for a conclusion that the [arbitration] clause does not comport with [Title VII's] statutory policy." *Id.*

The Court of Appeals for the Tenth Circuit has also ruled that where an employee may be responsible for bearing certain costs related to the arbitration of her Title VII claims, the arbitration agreement is unenforceable. *See Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d at 1234–35. Matthew Shankle signed an arbitration agreement that contained the following provision: "I will be responsible for one-half of the arbitrator's fees, and the company is responsible for the remaining one-half. If I am unable to pay my share, the company will advance the entirety of the arbitrator's fees; however, I will remain liable for my one-half." *Id.* at 1232. The Court of Appeals determined that this provision undermined the remedial and deterrent functions of Title VII and held that this fee-splitting arrangement rendered the arbitral forum an inaccessible one in which to vindicate Shankle's statutory rights. *Id.* at 1235. Therefore, the court concluded that the arbitration agreement was unenforceable under the FAA.

Lastly, in this Circuit, in a case where the plaintiff was financially "hanging by her fingernails" because, *inter alia,* her immigration status left her unable to pursue employment, the defendant employer was directed to initiate the arbitration and pay the nonrefundable filing fee. *Solieri v. Ferrovie Dello Stato Spa,* No. 97 Civ. 8844(RPP), 1998 WL 419013, at *5 (S.D.N.Y. July 23, 1998).

### III. Howard's Filing Fee

█ To initiate the process of vindicating her statutory claims in the arbitral forum, Howard must pay a $500 filing fee immediately. She contends that she should not be required to pay more than $150, which is the fee currently required by 28 U.S.C. § 1914 to initiate a civil action in federal district court. Howard argues that a $500 fee is inconsistent with *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and the statutory scheme enacted in Title VII.

In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court reiterated that statutory claims may be the subject of an arbitration agreement with the proviso that "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d at 1234. Therefore, "[a]s long as an avenue of relief remains available, [an] arbitration clause must be given full effect." *Rollins, Inc. v. Foster,* 991 F.Supp. 1426, 1438 (M.D.Ala. 1998) (considering unconscionability of arbitration provision). Standing alone, neither *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), or Title VII provide a substantive right to resolve statutory claims in a neutral forum with a filing fee of no more than $150. Rather, the factual question for the Court is whether Howard is without recourse to arbitration because she is unable to afford the filing fee.

After reviewing evidence provided by Howard in support of her hardship application, the AAA indicated that $500 would be required to initiate the arbitration of her claims pursuant to the Agreement. Howard has not contested the AAA's determination or provided any evidence that she is unable to pay the $500 filing fee. Rather, Howard's counsel states in his memorandum of law that: "After reviewing the AAA's proposal, the Plaintiff concluded that she was not in a financial position to accept AAA's terms, and

was therefore unable to initiate the arbitration." Pl.'s Memo. of Law at 5.

However, Howard is hardly "hanging by her fingernails." *Compare Solieri v. Ferrovie Dello Stato Spa,* 1998 WL 419013, at *4– *5 (employer ordered to pay filing fee for widow without work visa who had exhausted her meager savings and had been compelled to borrow money to pay her rent and living expenses). Howard has an annual salary of $49,500 and has no dependents. *See* Affidavit of Nellie Howard ("Howard Aff."), sworn to March 16, 1998, annexed to Reply Affidavit of Gregory L. Reid, sworn to Aug. 25, 1998, as Exh. "1"; U.S. Individual Income Tax Return, Form 1040, dated Feb. 1, 1998, annexed to Howard Aff. Without more, the Court will not modify the Agreement because Howard feels that it is no longer in her financial interest to comply with its terms. Therefore, the Court finds, on the present record, that the $500 filing fee is not a barrier to the vindication of Howard's statutory rights. *See also Rollins, Inc. v. Foster,* 991 F.Supp. at 1438 (plaintiff who has been unemployed for twenty-two years, receives social security and disability benefits and owns the trailer in which she resides did not show that costs of arbitration shut her out of forum).

### IV. Other Fees

█ Howard also seeks an order directing defendants to pay all other fees associated with the arbitration of her claims. However, federal courts adjudicate only those "real and substantial controvers[ies] admitting of specific relief ... as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). In determining whether issues are fit for adjudication, the Court must look to "whether the [disputed] action is 'final'" and "whether the issue is purely legal or whether 'consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to [undertake the disputed action].'" *In re Combustion Equip. Assocs., Inc.,* 838 F.2d 35, 37–38 (2d Cir.1988) (quoting *Gardner v. Toilet*

*Goods Ass'n,* 387 U.S. 167, 171, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967)).

Howard contends that the AAA's rules require her to pay a host of fees and an additional $2500 filing fee at the conclusion of her case. Notwithstanding the AAA's statement that "the Association can not waive or defer arbitrator's compensation, and accordingly those amounts will be [sic] become due upon commencement of the hearings," April 1998 AAA Letter, Howard has failed to present evidence that those fees have been demanded of her at this time. Ultimately, Howard may not be responsible for any fees. *See* National Rule for the Resolution of Employment Disputes 32(c), annexed to Hutchinson Aff. as Exh. "2." Therefore, at this time, the Court declines to order defendants to assume all fees associated with the arbitration of Howard's claims.

Furthermore, each Court of Appeals faced squarely with the question whether a plaintiff may be required to pay significant fees to vindicate her statutory rights under Title VII has determined that the requirement to pay such fees would improperly burden plaintiffs' rights. *See, e.g., Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d at 1234–35; *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d at 1062; *Cole v. Burns Int'l Security Svcs.,* 105 F.3d at 1484–85. Accordingly, those courts have either refused to enforce the arbitration agreement or ordered the defendant to pay the fees. *Id.* Given these decisions and the Court's determination that the Agreement is enforceable, the Court is confident that once the relevant law is brought to the arbitrator's attention, he will conduct a proceeding that will vindicate Howard's statutory rights. *See Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 232, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("[T]here is no reason to assume at the outset that arbitrators will not follow the law."). Similarly, given defendants' desire to arbitrate this case and reach a resolution that will be enforced by the Court, they should make every effort to ensure that Howard is afforded all of her statutory rights. However, if Howard is unable to vindicate her rights in the arbitral forum, she will have recourse to the Court. *See Shearson/American Express Inc. v. McMahon,* 482

U.S. at 232, 107 S.Ct. 2332 (judicial review of arbitral award is sufficient to ensure that arbitrators comply with requirements of statute); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637–38, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH,* 55 F.3d 1206, 1210 (6th Cir.1995) (arbitration should go forward even if there is a chance that statutory rights will not be fully recognized, because, should that occur, the aggrieved litigant may request the Court, at the award enforcement stage, to determine whether the arbitration award violates public policy). Therefore, in an effort to further the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court leaves the vindication of Howard's statutory rights to the arbitrator.

## CONCLUSION

For the reasons set forth above, Howard's motion to compel defendants to pay all but $150 of the fees associated with the arbitration of her claims is denied.

SO ORDERED.