**Taeko ARAKAWA, Plaintiff,**

v.

**JAPAN NETWORK GROUP, and Mr. Yoshiaki Iida, Defendants.**

**No. 98 Civ. 9055(SHS).**

United States District Court, S.D. New York.

July 12, 1999.

Noah A. Kinigstein, New York City, for plaintiff.

## OPINION AND ORDER

STEIN, District Judge.

Defendants Japan Network Group ("JNG") and Yoshiaki Iida have moved to compel arbitration of this employment dispute. That motion is granted because, as set forth below, a valid agreement to arbitrate was signed by plaintiff and because the Court finds that arbitration of plaintiff's Title VII claims should not be precluded simply because she may be required to pay a portion of the costs of the arbitration.

## I. Background

Plaintiff Taeko Arakawa was employed by JNG, a New York corporation that broadcasts Japanese TV programs in North America, from 1992 through 1998, first as an Administrative Assistant to the President and then in JNG's Hotel Sales Department. In December of 1997, JNG adopted an "Employee Policies & Procedures Handbook," which reads in pertinent part:

> ... any and all disputes and claims which arise out of or relate to your employment, to this handbook, or to the termination of your employment with or without cause, shall be settled by the final and binding arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association.

Affidavit of Jamie A. Levitt dated March 5, 1999, Ex. 2, p. 10. On January 6, 1998, plaintiff was given the Employee Handbook and signed an Acknowledgment of Receipt ("Acknowledgment") that reiterated the language quoted above and stated that plaintiff understood and agreed to this arbitration policy.[1] *See id.*, Ex. 2, p. 32.

In April of 1998, for reasons which are in dispute, Arakawa was terminated by JNG. Plaintiff claims that she was being sexually harassed by her supervisor, defendant Yoshiaki Iida, and that her termination was motivated by her refusal to travel with Iida. Defendants claim that Arakawa was terminated due to insubordination and that she refused to travel because it would interfere with her personal schedule. After her termination, Arakawa's attorney wrote JNG requesting "that the Arbitration clause of the Employee Manual be effectuated and that [JNG] immediately contact [plaintiff's attorney] to discuss the necessary procedures to start Arbitration." Levitt Aff., Ex. 3, May 13, 1998 letter. JNG responded by requesting that the parties try to resolve the dispute

---

1. The penultimate paragraph above the signature line of the Acknowledgment reads: "I understand and agree that any controversy, dispute or claim arising out of or relating to the Handbook, Acknowledgment, my employment, or the voluntary or involuntary termination of my employment with JNG shall be settled solely by final and binding arbitration in accordance with the provisions of this Handbook instead of in a court of law." Levitt Aff., Ex. 2, p. 32.

themselves before proceeding to arbitration.

In response, Arakawa filed this action in which she asserts claims of sexual harassment and unlawful discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a, et. seq., New York Exec. Law § 296, and the New York City Civil Rights Law, N.Y. City Admin. Code §§ 8–107 et. seq. As noted above, defendants have now moved to compel Arakawa to arbitrate their disputes.

## II. Discussion

■■■ The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Since the passage of the FAA federal courts have recognized a "strong federal policy favoring alternative means of dispute resolution," see *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998), and, in light of that policy, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See Ahing v. Lehman Bros., Inc.,* 1997 WL 634290, at *1 (S.D.N.Y. Oct. 14, 1997). Four factors must be considered in determining whether to compel arbitration pursuant to the FAA: 1) did the parties agree to arbitrate; 2) what is the scope of the arbitration agreement; 3) did Congress intend the federal statutory claims asserted by the plaintiff to be nonarbitrable; and 4) if only certain of the claims are arbitrable, should the court stay the balance of the proceedings pending arbitration. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987).

### A. Agreement to Arbitrate

■■■ In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. *See id.* at 845. In this action, the parties' agreement to arbitrate is evidenced by the Employee Handbook and the Acknowledgment signed by plaintiff, which itself reiterated the terms of the agreement to arbitrate. Pursuant to New York law, "a person who signs a contract is presumed to know its contents and to assent to them." *See Berger v. Cantor Fitzgerald Securities,* 967 F.Supp. 91, 93 (S.D.N.Y.1997) (citations omitted). Plaintiff is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *See Gilmer v. Interstate /Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991); *Genesco,* 815 F.2d at 845–46; *Berger,* 967 F.Supp. at 93.

■■■ Arakawa's attorney, in plaintiff's memorandum of law in opposition to this motion, claims that plaintiff only signed the contract to keep her job, and, therefore, the agreement to arbitrate is an unenforceable contract of adhesion. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion, p. 8. However, the "[m]ere inequality of bargaining power" that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1655–56. Moreover, plaintiff has not made the "disturbing showing of unfairness, undue oppression or unconscionability" necessary to void a contract on the basis that it is a contract of adhesion. *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 169 (2d Cir.1997). Indeed, nowhere in the complaint or in her affidavit does she suggest that she was threatened with the loss of her job unless she agreed to the arbitration policy.

### B. Scope of the Agreement

■■■ The arbitration clause contained in the Employee Handbook is broad, covering "any and all disputes and claims which arise out of or relate to [plaintiff's] employ-

ment, to this handbook, or to the termination of [plaintiff's] employment with or without cause." Courts which have considered arbitration clauses nearly identical to the one at issue here have concluded that the clause should be interpreted broadly to cover any disputes arising out of the employment relationship. *See Oldroyd*, 134 F.3d at 76; *Ahing*, 1997 WL 634290, at *2; *Gateson v. ALSK–Bank, N.V.*, 1995 WL 387720, at *4 (S.D.N.Y. Jun. 29, 1995). All of Arakawa's claims—sexual harassment, wrongful discharge and discrimination—arise out of or relate to her employment and are therefore claims that are subject to binding arbitration pursuant to the agreement. Accordingly, the scope of the arbitration agreement is broad enough to cover each of the causes of action asserted by plaintiff.

## C. Arbitrability of Title VII Claims

■ Plaintiff's assertion that Title VII claims cannot be the subject of an arbitration agreement lacks merit in light of numerous decisions holding that Congress did not intend to preclude arbitration of Title VII claims. *See, e.g., Raiola v. Union Bank of Switzerland, LLC*, 47 F.Supp.2d 499, 504 (S.D.N.Y.1999) (citing cases); *Hart v. Canadian Imperial Bank of Commerce*, 43 F.Supp.2d 395, 404 (S.D.N.Y.1999); *Desiderio v. National Association of Securities Dealers, Inc.*, 2 F.Supp.2d 516, 520 (S.D.N.Y.1998); *Rand v. J.C. Bradford & Co.*, 1998 WL 872421, at *4 (S.D.N.Y. Dec. 15, 1998); *Bishop v. Smith Barney, Inc.*, 1998 WL 50210, at *7 (S.D.N.Y. Feb. 6, 1998) (citing cases); *Ber-*

*ger*, 967 F.Supp. at 96; *Schuetz v. CS First Boston Corp.*, 1997 WL 452392, at *4 (S.D.N.Y. Aug. 8, 1997); *Scher v. Equitable Life Assurance Soc'y of the U.S.*, 866 F.Supp. 776, 778 (S.D.N.Y.1994).[2]

■ Equally meritless is Arakawa's claim that Section 1 of the FAA, 9 U.S.C. § 1, which excludes from the coverage of the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," precludes arbitration of this matter. Section 1 only excludes arbitration agreements that involve workers in the transportation industry from the coverage of the FAA. *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir.1997); *Powers v. Fox Television Stations, Inc.*, 923 F.Supp. 21, 23 (S.D.N.Y. 1996); *Maye v. Smith Barney Inc.*, 897 F.Supp. 100, 104 (S.D.N.Y.1995).

## D. Splitting of Arbitration Costs

Finally, Arakawa asserts that the arbitration clause here is not valid because it requires plaintiff and JNG to split the fees and costs of the arbitration.[3] In *Gilmer*, the U.S. Supreme Court found that federal statutory claims could be subject to pre-existing arbitration agreements because "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *See Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647. In light of *Gilmer*, the U.S. Courts of Appeals for the Tenth, Eleventh, and D.C. Circuits have found that arbitration agreements

---

**2.** Plaintiff's related claims asserted pursuant to the New York Executive Law and the New York City Civil Rights law are also subject to arbitration. *See Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 638, 601 N.Y.S.2d 686, 693–94, 619 N.E.2d 998, 1005–06 (1993) (employment discrimination claims arising under federal, state, and local law are arbitrable). Because all of the claims asserted by the plaintiff are subject to binding arbitration, the Court need not consider the fourth prong of the *Genesco* test.

**3.** The Employee Handbook reads: "You and the Company shall each pay for the fees and/or expenses of your respective attorneys, witnesses, and other expenses connected with presenting your respective cases in arbitration. All other costs shall be shared equally between you and JNG." Levitt Aff., Ex. 2, p. 10.

that require a Title VII plaintiff to pay all or part of an arbitrator's fee are unenforceable because they do not provide for a forum where litigants can effectively vindicate their statutory rights. *See Shankle v. B–G Maintenance Management of Colo., Inc.,* 163 F.3d 1230, 1235 (10th Cir.1999); *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1485 (D.C.Cir.1997). The panel in *Cole* reasoned that because litigants would never be required to pay for the services of a judge, arbitration in which the plaintiff is required to pay the arbitrator's fees cannot be a reasonable substitute for a judicial forum and is therefore an inadequate forum for the vindication of Title VII rights. *See Cole,* 105 F.3d at 1484.

Other circuits have found that the possibility that a plaintiff may be required to pay arbitration fees is not, by itself, a sufficient reason to invalidate an agreement to arbitrate Title VII claims at the outset of an action because the arbitral panel may not in fact require the plaintiff to pay fees and, if a plaintiff believes that excessive fees have been levied against him or her, judicial review of the imposition of the fees is available after arbitration. *See Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366 (7th Cir. 1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 16 (1st Cir.1999). In *Rosenberg,* the First Circuit found that even with the imposition of fees upon the plaintiff arbitration may not be a less appropriate forum than a court for the vindication of statutory rights because "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court." *Rosenberg,* 170 F.3d at 16.

The Second Circuit has not opined on the issue of whether an arbitration agreement that leaves open the possibility that the plaintiff may have to pay the fees of the arbitration can provide an adequate forum for the redress of Title VII rights, and the few cases of the district courts in this Circuit that have dealt with the issue have not established a uniform rule. *Compare Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 255–56 (S.D.N.Y.1998) (indicating in dicta that an agreement to arbitrate Title VII claims that calls for plaintiff to pay fees is unenforceable), *with Howard v. Anderson,* 36 F.Supp.2d 183, 187 (S.D.N.Y. 1999) (declining to direct employer to pay arbitration fees where it is not certain that employee will be forced to pay those fees and future judicial review is available).

■ The arbitration agreement in this action calls for arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. *See* Levitt Aff., Ex. 2, p. 10. Pursuant to those rules and the arbitration agreement, Arakawa would be required to pay a $250 filing fee (50% of the $500 fee required by the rules) and $75 in administrative fees for each day of the arbitration (50% of $150). *See* Affidavit of Jamie A. Levitt dated March 21, 1999, Ex. C, National Rules for the Resolution of Employment Disputes, p. 16–17. Arakawa has indicated that she is "a working person" who does "not have unlimited means" to vindicate her rights. *See* Arakawa Affidavit dated March 15, 1999, ¶ 2. These filing and administrative fees, however, cannot be said to present, as a matter of law, so great a burden upon her as to make the arbitration an inadequate forum for resolution of her Title VII claims. *See Howard,* 36 F.Supp.2d at 186.

■ Pursuant to the arbitration agreement Arakawa would also be required to pay one half of any other expenses incurred in the arbitration—which arguably includes the arbitrator's compensation. This Court agrees with the opinions expressed by the First and Seventh Circuits and finds that the mere fact that a plaintiff faces the possibility of being charged arbitration fees, including sharing the arbitrator's compensation if directed to do so by the arbitrator, does not make the agreement to arbitrate Title VII claims unenforceable as a matter of law. *See*

*Koveleskie,* 167 F.3d at 366; *Rosenberg,* 170 F.3d at 10. A fee splitting arrangement is only contrary to the remedial and deterrent aims of Title VII if the fees are so great and the plaintiff's financial situation is such that the imposition of the fees would make the plaintiff unable to, or would substantially deter plaintiff from seeking to, enforce his or her statutory rights. At this point in the litigation it is not clear how large the fees of the arbitration will be or whether plaintiff will be required to pay any portion of it, and, therefore, this Court cannot conclude that the payment of fees will constitute a barrier to the vindication of Arakawa's statutory rights. The Court will maintain jurisdiction over any subsequent petition with respect to the award. *See Koveleskie,* 167 F.3d at 366; *Rosenberg,* 170 F.3d at 16; *Ahing,* 1997 WL 634290, at *3.

### III. Conclusion

Accordingly, defendants' motion to compel arbitration is granted and this action is dismissed. The parties are directed to proceed to arbitration forthwith. This Court will retain jurisdiction over any subsequent petition with respect to the award.