**Kenneth H. MILDWORM, Plaintiff,**

v.

**John ASHCROFT, Attorney General of the United States, Joseph Guccione, in his Individual Capacity, Akal Security, Inc. and Richard Wimberly, Defendants.**

No. CV 00–5161.

United States District Court, E.D. New York.

March 29, 2002.

---

Brewington by Frederick K. Brewington, Hempstead, NY, for plaintiff.

Jackson Lewis Schnitzler & Krupman by Margaret Armstrong Weiner and Russell E. Adler, White Plains, NY, for Akal Security, Inc. and Richard Wimberly, defendants.

Alan Vinegrad, United States Attorney by Kevin Mulry, Assistant United States Attorney, Central Islip, NY, for John Ashcroft, Attorney General of the United States and Joseph Guccione, defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Kenneth Mildworm ("Mildworm") brings this action against the above-named defendants asserting claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; New York's Human Rights Law, N.Y.Exec.Law § 290 *et seq.;* and the New York City Administrative Code, as well as for violations of his rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution. Defendants Akal Security, Inc. ("Akal") and Richard Wimberly ("Wimberly") (collectively, "moving defendants") move pursuant to Rule 12(b)(1), (3), and (6) of the Federal Rules of Civil Procedure to dismiss the complaint or, alternatively, to compel arbitration. Mildworm opposes the motion.

## I. BACKGROUND

For purposes of this motion, the relevant background can be summarized as follows. In 1985, Mildworm began working as a Court Security Officer ("CSO") in the Court Security Officer Program established by the United States Marshals Service. Complaint ¶ 17. On or about Octo-

Hamburger, Maxson & Yaffe, LLP by David N. Yiffe and Judith A. Castillo, Melville, NY, Law Offices of Frederick K.

ber 1, 1998, Akal hired Mildworm as a Contract Manager and Chief CSO in furtherance of Akal's contract with the Marshals Service as the new contractor responsible for overseeing security in the courthouses of the Second Circuit. *Id.* ¶¶ 16, 18. Wimberly, Akal's Director of Court Security, was Mildworm's direct supervisor. *Id.* ¶ 18.

On March 19, 1999, as a condition of employment, Mildworm signed an "Employment Agreement" with Akal. Affidavit of Margaret Armstrong Weiner, Esq. in Support of Defendants' Motion to Dismiss ("Weiner Aff.") ¶ 6 & Ex. B. The Employment Agreement contains an agreement to arbitrate. In this respect, section 4(f) of the Employment Agreement (the "Arbitration Provision") provides:

> Employee agrees to submit any legal and/or equitable claims arising out of their employment or termination of employment to final and binding arbitration, in accordance with the Company's arbitration procedures. By agreeing to arbitrate, the employee understands that he/she is not giving up any substantive rights under either state or federal law. The American Arbitration Association will schedule the arbitration and appoint the arbitrator to settle any claims, pursuant to the Company's arbitration procedures. Costs for arbitration will be shared equally by the employee and the Company (although the employee will not be required to contribute more than $2,500 towards the cost of the arbitrator). By signing this Employment Agreement, Employee acknowledges that they are aware of the Company's arbitration policy as stated herein, and agrees to abide by its terms and conditions.

*Id.*

By letter dated June 11, 1999, Akal notified Mildworm that his employment was terminated at the end of that business day. Complaint ¶ 43.

Mildworm subsequently filed suit in this Court. Moving defendants move to dismiss or, alternatively, to compel arbitration based on the Arbitration Provision.

Moving defendants argue that all of Mildworm's claims in this action directly concern his employment and termination of employment, and that these claims fall within the Arbitration Provision's coverage of "all legal and/or equitable claims arising out of [Mildworm's] employment or termination of employment." Consequently, moving defendants request that this Court dismiss Mildworm's claims against them or, alternatively, compel Mildworm to submit these claims to arbitration.

In opposing the motion, Mildworm argues that the Arbitration Provision is unenforceable because it is vague, as it did not plainly place him on notice that he was waiving his right to bring federal and state employment discrimination claims in a judicial forum. According to Mildworm, the "arbitration clause must contain language that reasonably notifies a plaintiff that he is waiving his right to litigate federal employment discrimination claims in federal court, or it will not be enforced." Memorandum of Law in Opposition to Motion to Dismiss the Complaint or, in the Alternative, to Compel Arbitration ("Pl. Mem."), at 3. In this respect, Mildworm asserts that the second sentence of the Arbitration Provision (i.e., "By agreeing to arbitrate, the employee understands that he/she is not giving up any substantive rights under either state or federal law."), did not clearly alert him that he would not be able to enforce his rights in state or federal court. Affidavit of Kenneth H. Mildworm in Opposition to Motion to Dismiss the Complaint or to Compel Arbitration ("Mildworm Aff.") § 28.

In addition, Mildworm argues, *inter alia,* that the cross-reference in the Arbitration Provision to Akal's "arbitration procedures" further contributes to the vagueness of the Arbitration Provision. The cross-referenced "Akal Arbitration Procedure" provides, in relevant part:

> Grievances processed in accordance with the requirements that remain unsettled may be processed to arbitration, giving the Akal Director of Human Resources written notice of its desire to proceed to arbitration not later than fifteen (15) days after rejection of the grievance by the Office of the CEO. Grievances which have been processed in accordance with the requirements which remain unsettled shall be processed in accordance with the following procedures and limitations.

Mildworm Aff.Ex. C; *see also* Weiner Aff. Ex. C. The Akal Arbitration Procedure then identifies the "procedures and limitations" that are applicable to arbitration. Mildworm Aff.Ex. C. According to Mildworm, the Akal Arbitration Procedure refers only to "grievances," implying that it applies "to complaints falling well short of statutory discrimination claims," Pl.Mem. at 5–6, *i.e.,* "to complaints about on-the-job issues," Mildworm Aff. ¶¶ 26–27. Moreover, Mildworm argues that the cross-reference to the Akal Arbitration Procedure causes further confusion because it provides that grievances "may" be processed to arbitration, indicating that arbitration is an optional procedure. Pl.Mem. at 6. According to Mildworm, "[t]o any reader, and certainly to a lay person, this paragraph would indicate that arbitration applies to 'grievances' that remain unresolved, that it is an optional procedure, and that the employee holds the option." *Id.* at 6.

Moving defendants did not address in their supporting or reply papers Mildworm's argument concerning the cross-ref-

erence to the Akal Arbitration Procedure. This Court therefore directed moving defendants to submit supplemental papers on this issue. The moving defendants submitted supplemental papers, and Mildworm responded with supplemental papers as well. In their supplemental papers, moving defendants argue that an arbitration agreement may cross-reference a preexisting document, particularly arbitration procedures, without rendering the arbitration agreement vague, provided the cross-reference is "clear and identifiable." Supplemental Memorandum of Law in Support of Defendants Akal and Wimberly's Motion to Dismiss the Complaint or, in the Alternative, to Compel Arbitration Pursuant to Court Order, at 7. From that proposition, moving defendants assert that the Arbitration Provision's cross-reference to the Akal Arbitration Procedure is clear and identifiable, *id.* at 8, something Mildworm does not dispute. Moving defendants, however, do not directly address Mildworm's contention that the "language" of the Akal Arbitration Procedure (i.e., "grievances ... may be processed to arbitration"), not merely the cross-reference, renders the Arbitration Provision vague because that language "indicate[s] that arbitration applies to 'grievances' that remain unresolved, that it is an optional procedure, and that the employee holds the option." Pl.Mem. at 6; *see also* Supplemental Memorandum of Law in Opposition to Motion to Dismiss the Complaint or, in the Alternative to Compel Arbitration, at 8.

In further support of his arguments, Mildworm asserts, *inter alia,* (1) that he had never before been required to sign an employment agreement, particularly one with an arbitration clause; (2) that the "papers themselves" did not indicate that he should seek legal assistance prior to signing the Employment Agreement; (3) that moving defendants never explained

the significance of the Arbitration Provision to him; (4) that moving defendants repeatedly pressured him to sign the Employment Agreement; and (5) that he did not understand that by signing the Employment Agreement and agreeing to arbitrate he would be giving up any right to bring claims in federal or state court. Mildworm Aff. ¶¶ 17–30.

In addition, Mildworm argues that the Arbitration Provision is unenforceable because it requires him to bear significant, mandatory arbitrator's fees and costs. In support of this argument, Mildworm contends:

> I simply cannot afford to pay thousands of dollars to an arbitrator in addition to paying an arbitration filing fee and sharing half of all other "administration expenses," such as hearing fees and postponement fees. I understand from my attorneys that even the courts recognize that an "average" arbitration costs between approximately $2,000 and $5,000 in such fees, and possibly much more.

*Id.* ¶ 43. In their supplemental papers, moving defendants assert that Mildworm earned an annual yearly salary of $60,000 during his employment with Akal. Affidavit of Sat Nirmal Kaur Khalsa ¶ 6. In his supplemental papers, Mildworm asserts that he now earns an annual salary of $31,000; that he sold his New York house because he could no longer afford to make payments on it; and that he moved to Florida, where, he maintains, the cost of living is significantly lower than in New York, but where he nevertheless "struggle[s] to make ends meet." Supplemental Affidavit of Kenneth H. Mildworm in Opposition to Motion to Dismiss the Complaint or to Compel Arbitration ("Mildworm Supplemental Aff.") ¶ 12. In his supplemental papers, Mildworm's counsel now submits a copy of the American Arbitration Association's ("AAA") "National

Rules for the Resolution of Employment Disputes." Supplemental Affirmation of David N. Yaffee, Esq. in Opposition to Motion to Dismiss the Complaint or to Compel Arbitration ("Yaffee Supplemental Aff.") ¶ 2 & Ex. A. According to counsel, a claimant must pay administrative fees, filing fees, hearing fees, daily room rental fees, arbitrator fees, and case service fees for claims pursued before AAA. *Id.* ¶ 3. Counsel asserts that if the matter is deemed by the AAA to arise out of an "employer-promulgated plan," a non-refundable filing fee will range from $500 (for a single arbitrator) to $1,500 (for a panel of three or more arbitrators). *Id.* ¶ 4 & Ex. A. But, counsel asserts, if the AAA deems the matter to arise out of an "individually-negotiated employment agreement," the initial filing fee ranges from $500 (for claims up to $10.000) to $13,000 (for claim between $7 million and $10 million). *Id.* ¶ 5 & Ex. A. Counsel concludes that because Mildworm is "suing for a minimum of $5 million, the initial filing fee is therefore expected to be as much as $8,500, *plus* a case service fee in the amount of $2,500, for an astounding and prohibitive total of $11,000!" *Id.* (emphasis in original). Counsel does not explain how the distinction is made between an "employer-promulgated plan" and an "individually-negotiated employment agreement," or which applies in this matter, but advises the Court that the AAA makes the determination and its determination is "final." *Id.* ¶¶ 4–5 & n. 1. Other costs, according to counsel, include hearing fees of $150 per party per day (for a single arbitrator) and $250 per party per day (for a multi-arbitrator panel); hearing room rental of $125 per party per day; and postponement fees of $150 (for a single arbitrator) to $250 (for a multi-arbitrator panel). *Id.* ¶¶ 6–7, 9 & Ex. A. Arbitrator's fees, according to counsel, can "consist of per diem rates of as much or more than

$2,000, and some arbitrators charge by the hour at fees as high as $400." *Id.* ¶ 8.

Moving defendants have not responded to Mildworm's supplemental submissions concerning Mildworm's alleged financial position and the costs of arbitration, particularly the submission regarding AAA costs and fees, as this Court directed supplemental papers from moving defendants only on the cross-reference issue.

## II. *DISCUSSION*

### A. *Agreement to Arbitrate and Scope of Arbitration*

■ The Federal Arbitration Act ("FAA") establishes a federal policy favoring arbitration agreements, *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. In determining whether the Arbitration Provision is enforceable and whether to compel arbitration, this Court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether the claims asserted by Mildworm are arbitrable; and (4) if only certain of the claims are arbitrable, whether the Court should stay the balance of the proceedings pending arbitration. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987). Moving defendants seek to compel arbitration of all of Mildworm's claim against them, and Mildworm does not argue that any of his claims against moving defendants are not arbitrable. Indeed, there is no question that his federal and state employment discrimination claims are arbitrable. *See, e.g., Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("In light of [the FAA's

purpose], we have recognized that federal statutory claims can be appropriately resolved through arbitration, and we have enforced agreements to arbitrate that involve such claims."); *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 203–05 (2d Cir.1999) (holding Title VII claims arbitrable); *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 601 N.Y.S.2d 686, 691–92, 619 N.E.2d 998 (1993) (holding New York State Human Rights Law claims arbitrable). Rather, Mildworm argues that the Arbitration Provision is vague and, therefore, unenforceable; and that it "did not plainly and unambiguously place him on notice that he was waiving his right to pursue his federal and state employment discrimination claims in a judicial forum by executing the agreement." Pl.Mem. at 1. Thus, the Court must consider whether the parties agreed to arbitrate and the scope of the arbitration.

#### 1. *Agreement to Arbitrate*

■ In determining whether the parties have agreed to arbitrate, the court applies "generally accepted principles of contract law." *Genesco*, 815 F.2d at 845. "Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Id.; see also Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647. Moreover, under New York law, "a person who signs a contract is presumed to know its contents and to assent to them." *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 93 (S.D.N.Y.1997).

■ The parties' agreement to arbitrate is evidenced by the Arbitration Provision in the Employment Agreement signed by Mildworm. Despite his asserted lack of knowledge concerning the Arbitration Provision and moving defendants' asserted

failure to explain the provision to him, Mildworm is presumed to have known the contents of the Employment Agreement, including the Arbitration Provision, and to have assented to the agreement and its provisions. The circumstances alleged by Mildworm do not render the Arbitration Provision unenforceable. Contrary to Mildworm's suggestion, "the '[m]ere inequality of bargaining power' that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable." *Arakawa v. Japan Network Group*, 56 F.Supp.2d 349, 352 (S.D.N.Y.1999) (quoting *Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647). Moreover, Mildworm's assertions, particularly that moving defendants "pressured him" to sign, do not rise to the level of "unfairness, undue oppression or unconscionability," *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 169 (2d Cir.1997); *see Genesco*, 815 F.2d at 845–46, to justify nonenforcement of the Arbitration Provision. *See Arakawa*, 56 F.Supp.2d at 352.

Nor does the Court find the Arbitration Provision vague. The Arbitration Provision plainly provides for binding arbitration of "any legal and/or equitable claims arising out of [Mildworm's] employment or termination of employment." The second sentence of the Arbitration Provision then plainly advises the employee that "he she is not giving up any substantive rights under either state or federal law" by agreeing to binding arbitration. Contrary to Mildworm's assertions, the second sentence clarifies, rather than confuses, the effect of the agreement to arbitrate on the employee's federal and state rights. Reasonably construed, this sentence confirms to the employee that the employee retains his/her federal and state rights, albeit that those rights must be pursued in arbitration, not in federal or state court. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647 ("[W]e recognized that '[b]y agreeing to

arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" (quoting *Mitsubishi Motors Corp. v. Soler. Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985))). Thus, the first two sentences of the Arbitration Provision alert the employee that he or she would not be able to enforce those substantive rights in federal or state court, but must enforce those rights (which the second sentence provides are preserved) in arbitration.

As for Mildworm's contention that the cross-reference in the Arbitration Provision to the Akal Arbitration Procedure renders the Arbitration Provision vague, this Court disagrees. As noted above, moving defendants argue that the Arbitration Provision's cross-reference to the Akal Arbitration Procedure is "clear and identifiable" and, therefore, does not render the Arbitration Provision vague; but they do not directly address Mildworm's contention that the "language" of the Akal Arbitration Procedure, not merely the cross-reference, renders the Arbitration Provision vague because that language "indicate[s] that arbitration applies to 'grievances' that remain unresolved, that it is an optional procedure, and that the employee holds the option," Pl.Mem. at 6. Nevertheless, contrary to Mildworm's contention, the language of the Akal Arbitration Procedure does not render vague the clear expression in the Arbitration Provision that "any legal and/or equitable claims" arising out of Mildworm's "employment or termination of employment" is subject to arbitration. Given that clear expression, it is also clear that arbitration is not an "optional procedure" for Mildworm's assertion of employment discrimination claims, as the cross-reference merely in-

corporates the "procedures and limitations" that are applicable to arbitration, as provided in the Akal Arbitration Procedure.

### 2. Scope of the Agreement

As for the scope of the agreement, the Arbitration Provision is broad, covering "all legal and or equitable claims arising out of [Mildworm's] employment or termination of employment." Such a "broad arbitration clause . . . justifies a presumption of arbitrability." *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998). Indeed, courts repeatedly have construed similar arbitration agreements broadly to encompass any dispute arising out of the employment relationship, including employment discrimination claims. *See Rajjak v. McFrank & Williams*, 2001 WL 799766, at *27–33 (S.D.N.Y. July 13, 2001); *Arakawa*, 56 F.Supp.2d at 352–53; *Ahing v. Lehman Brothers Inc.*, 1997 WL 634290, at *2 (S.D.N.Y. Oct.15, 1997); *Gateson v. ASLK–Bank, N.V.*, 1995 WL 387720, at *4–5 (S.D.N.Y. June 29, 1995). In this case, the Arbitration Provision encompasses Mildworm's asserted federal and state employment discrimination claims, as Mildworm fails to assert circumstances sufficient to rebut this presumption of arbitrability. Accordingly, the scope of the arbitration agreement is broad enough to cover Mildworm's federal and state employment discrimination claims.

Thus, this Court concludes that the Arbitration Provision is not unenforceable as vague, and that Mildworm's claims against moving defendants are subject to arbitration.

### B. Sharing of Arbitration Costs

As noted above, Mildworm argues that the Arbitration Provision is unenforceable because it requires a sharing of arbitration costs. Under the Arbitration Provision, Mildworm must share equally with Akal the "[c]osts for arbitration," although Mildworm's share of the "cost of the arbitrator" is capped at $2,500. Mildworm argues that "[a] clause requiring the employee to bear significant arbitration costs can render an otherwise valid arbitration agreement unenforceable." Pl. Mem. at 9. Thus, Mildworm apparently argues that the "cost-sharing" provision taints the entire Arbitration Provision and cannot be severed. As noted, Mildworm asserts that he cannot afford to pay the expected arbitration costs and fees. Mildworm Aff. ¶ 43; Mildworm Supplemental Aff. ¶ 12; Yaffee Supplemental Aff. ¶¶ 3–9 & Ex. A.

Moving defendants, on the other hand, argue that the cost-sharing provision is valid and enforceable. Alternatively, moving defendants argue that if the cost-sharing provision is found to be invalid, then that provision can be "modified"—although they neither suggest the modification nor cite any authority their position.

The Second Circuit has not addressed this issue. While some circuits have held that an arbitration agreement requiring cost-sharing or fee-splitting is unenforceable because the potential of such costs deter or prevent an employee from vindicating his/her statutory rights in the arbitral forum, *see, e.g., Shankle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1235 (10th Cir.1999); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998); *Cole v. Burns Int'l Sec. Servs.*, · 105 F.3d 1465, 1485 (D.C.Cir.1997), other circuits have held that a cost-sharing or fee-splitting provision does not necessarily make the arbitration agreement unenforceable, but requires a case-by-case inquiry to determine whether such costs prevent a party from effectively vindicating his/her statutory

rights in the arbitral forum, *see, e.g., Williams v. Cigna Fin. Advisors Inc.,* 197 F.3d 752, 763–64 (5th Cir.1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 15–16 (1st Cir. 1999); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366 (7th Cir.1999).

However, the Supreme Court in *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), addressed the question of whether an agreement to arbitrate is unenforceable "because it says nothing about the costs of arbitration, and thus fails to provide [the party] protection from potentially substantial costs of pursuing [that party's] federal statutory claims in the arbitral forum." *Id.* at 89, 121 S.Ct. 513. Although *Green Tree* did not involve an employment dispute, but rather, a plaintiff who asserted claims against financial institutions that financed her purchase of a mobile home for violations of the Truth in Lending Act and the Equal Credit Opportunity Act, the Supreme Court's discussion is particularly instructive. The district court compelled arbitration, and the Eleventh Circuit reversed, holding that "the agreement to arbitrate posed a risk that [plaintiff's] ability to vindicate her statutory rights would be undone by 'steep' arbitration costs, and therefore was unenforceable." *Id.* at 84, 121 S.Ct. 513. The Supreme Court disagreed and reversed that aspect of the Eleventh Circuit's judgment. *See id.* Nevertheless, the Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum," *id.* at 90, 121 S.Ct. 513, and held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121

S.Ct. 513. The Supreme Court did not specify the showing required to establish that the imposition of arbitration costs prevents a party from effectively vindicating his/her federal statutory rights, but it did invite a case-by-case inquiry. *See id.* ("How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point."). Because the plaintiff did not make the required showing as to the costs she would bear if she proceeded to arbitration, the Supreme Court refused to invalidate the arbitration agreement at issue based merely on plaintiff's articulated "risk" of prohibitive costs—a ground it found "too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91, 121 S.Ct. 513.

This Court concludes that, based on *Green Tree,* the appropriate inquiry requires a case-by-case determination of whether the imposition of arbitration costs prevents a party from effectively vindicating his/her federal statutory rights. Indeed, based on *Green Tree,* the Third and Fourth Circuits hold that this is the appropriate inquiry. *See Bradford v. Rockwell Semiconductor or Sys., Inc.,* 238 F.3d 549, 556 (4th Cir.2001) ("[T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation. *i.e.,* a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 606–08 (3d Cir.2002); *but see Ball v. SFX Broad., Inc.,* 165 F.Supp.2d. 230, 239–40 (S.D.N.Y.2001).

Nevertheless, the record is not adequate for this Court to determine how large the costs of arbitration will be, how much of the costs Mildworm will be required to pay, and whether he can effectively vindicate his statutory rights, particularly since Mildworm largely attempts to make this factual showing in his supplemental papers—as to which moving defendants have not responded. Therefore, this Court cannot conclude on the present record that the cost-sharing provision constitutes a barrier to the vindication of Mildworm's statutory rights. Accordingly, this Court will maintain jurisdiction over any subsequent petition with respect to the award. *See Rosenberg*, 170 F.3d at 16; *Koveleskie*, 167 F.3d at 366; *Rajjak*, 2001 WL 799766, at *4; *Arakawa*, 56 F.Supp.2d at 355.

### III.  *CONCLUSION*

For the above reasons, defendants Akal and Wimberly's motion to compel is granted and the action is dismissed as against these defendants; and this Court retains jurisdiction over any subsequent petition regarding the award.

SO ORDERED.